UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

THOMAS DOWNS, JR.,  :
                    :    HONORABLE JOSEPH E. IRENAS
         Plaintiff, :
                    :    CIVIL ACTION NO. 04-5358 (JEI)
     v.             :
                    :            **OPINION**
U.S. PIPE & FOUNDRY COMPANY, :
et al.,             :
                    :
         Defendants. :

**APPEARANCES:**

CAPEHART & SCATCHARD, P.A.
By: Armando V. Riccio, Esq.
Laurel Corporate Center
800 Midlantic Drive, Suite 300
Mt. Laurel, New Jersey 08054
     Counsel for Plaintiff

COZEN O'CONNOR
By: Jeffrey Ivan Pasek, Esq.
Liberty View Suite 300
457 Haddonfield Road
Cherry Hill, New Jersey 08002
     Counsel for Defendants U.S. Pipe & Foundry, Kriner, Janicki
     and Caporaletti

**IRENAS**, Senior District Judge:

   Plaintiff Thomas Downs, Jr. ("Downs"), brought the instant action against his former employer, U.S. Pipe & Foundry Company ("U.S. Pipe"), and Barry Kriner, Richard Janicki and James Caporaletti, alleging various state and federal statutory claims arising from the termination of his employment by U.S. Pipe. Presently before the Court is the Motion for Partial Summary Judgment on Count Two of Downs's Complaint, filed by all four

1

defendants. For the reasons set forth below, the Motion will be denied.

## I.

Downs was employed by U.S. Pipe for a period of at least 21 years. During that time, Downs received several raises, was promoted several times, and reached the position of General Foreman. At all relevant times, defendant Richard Janicki ("Janicki") was the plant manager for U.S. Pipe, defendant James Caporaletti ("Caporaletti") was Downs's immediate supervisor, and defendant Barry Kriner ("Kriner") was the Human Resources Director for the Burlington plant of U.S. Pipe (collectively "Defendants"). Downs contends that his wife suffered from bipolar and manic depressive disorders, and that she required hospitalization for her disorders on more than one occasion.

In late January, 2003, Downs asked Caporaletti for permission to take a number of days off of work because his wife was ill. Downs alleges that Caporaletti denied this request, but Downs nonetheless took the days off. Following his return to work, Caporaletti engaged Downs in a heated argument. Janicki subsequently refused to discuss the incident with Downs. Instead, Downs was contacted by Kriner several times over the course of the next day and a half. Downs's employment was terminated on February 6, 2003.

Downs filed a Complaint against Defendants on August 23, 2004, in the Superior Court of New Jersey, Burlington County. Defendants timely removed the case to the District of New Jersey on November 1, 2004, pursuant to 28 U.S.C. § 1441.[1]

Count One of the Complaint alleges that Defendants unlawfully denied and interfered with Downs's rights under the Family Medical Leave Act and the New Jersey Family Medical Leave Act. Count Two alleges that Defendants unlawfully discriminated against him and interfered, intimidated, and created a hostile work environment because of his relationship with and association with a disabled person, namely his wife, under the Americans with Disability Act ("ADA") and NJLAD. This count also alleges that some or all of Defendants aided and abetted each other in violating Downs's rights under the ADA and NJLAD and failed to prevent or end the alleged discrimination.

On February 28, 2006, the parties filed a "Stipulation of Dismissal" as to Downs's ADA claims. As a result, Downs's remaining claims in Count Two of the Complaint are limited to relief available under NJLAD. On May 3, 2006, Defendants filed the instant Motion for Partial Summary Judgment with respect to Count Two of the Complaint.

---

[1] This Court has jurisdiction over the federal statutory claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a).

II.

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed.R.Civ.P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving part. *Pollock v. Am. Tel & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation and citation omitted; ellipses in original).

III.

Defendants contend that summary judgment is appropriate because the NJLAD provides no right of action based upon any discrimination Downs may have suffered as a result of his

association with a disabled person. The NJLAD does not specifically bar an employer from taking an adverse employment action based upon a person's association with a person with a disability.² *See* N.J.S.A. § 10:5-12(a). The New Jersey Supreme Court has not yet ruled on the question of whether an employment discrimination claim may be brought under the NJLAD in cases where the discrimination was motivated by the plaintiff's association with a member of a protected class.

"In adjudicating a case under state law, . . . we are to apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us. In the absence of guidance from the state's highest court, we are to consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule." *Gares v. Willingboro Twp.*, 90 F.3d 720, 725 (3d Cir. 1996) (internal citations omitted). While an intermediate appellate court is not certain to correctly predict how the state's highest court would rule, its ruling "is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West*

---

² The NJLAD does explicitly prohibit discrimination against a person whose spouse is a member of a protected class in instances of refusing to do business with, and granting or accepting letters of credit or contracting for the exchange of goods. N.J.S.A. §§ 10:5-12(l), 10:5-12(m)(1).

5

v. *Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940). Furthermore, "while we may not ignore the decision of an intermediate appellate court, we are free to reach a contrary result if, by analyzing 'other persuasive data', we predict that the New Jersey Supreme Court would hold otherwise. In short, an intermediate appellate court holding is presumptive evidence, rather than an absolute pronouncement, of state law." *Nat'l Surety Corp. v. Midland Bank*, 551 F.2d 21, 30 (3d Cir. 1977).

Because the New Jersey Supreme Court has yet to rule on this specific issue, we must predict how that court would rule here. *See Gares*, 90 F.3d at 725. As a starting point, there is a short series of cases from the Appellate Division that has recognized NJLAD claims based on association despite the absence of a specific statutory prohibition. In the first case, the Appellate Division concluded that the plaintiff, a white male, had a right to bring a suit when he was fired for refusing to cease dating an African-American female. *O'Lone v. N.J. Dep't of Corr.*, 313 N.J. Super. 249 (App. Div. 1998). The Court reasoned as follows:

> Regardless of the race of this plaintiff, he suffered the same injury as a minority when he was discharged for allegedly associating with a member of a prohibited group. Plaintiff has shown "that the prohibited consideration [race] played a role in the decisionmaking process and that it had a determinative influence" on his termination. *Miller v. CIGNA Corp.*, 47 F.3d 586, 597 (3d Cir. 1995). Therefore, to achieve substantial justice, we conclude that where the plaintiff is wrongfully discharged for associating with a member of a protected group, that it is the functional equivalent of being a member of the protected group.

6

*O'Lone*, 313 N.J. Super. at 255.

The Appellate Division reiterated its reasoning a year later in holding that a white property owner had the right to sue a condominium association when it refused to allow him to rent to an African-American tenant. *Berner v. Enclave Condo. Ass'n, Inc.*, 322 N.J. Super. 229 (App. Div. 1999), cert. denied, 162 N.J. 131 (1999). Here too, the Court held that "regardless of the race of the plaintiff, he suffered the same injury as a minority . . . . In this respect, *N.J.S.A.* 10:5-13 provides that '[a]ny person claiming to be aggrieved by . . . unlawful discrimination' may file a LAD complaint. Plaintiff is such an aggrieved person." *Berner*, 322 N.J. Super. at 235 (internal citations omitted).[3]

Defendants rely on a more recent Appellate Division case in which that court denied a mother's claim for damages for emotional distress resulting from the harassment of her disabled son. *L.W. v. Toms River Reg'l Sch. Bd. of Educ.*, 371 N.J. Super. 465 (App. Div. 2005). Defendants contend that *L.W.* contradicts the holdings of *O'Lone* and *Berner*, but it is clear that the Appellate

---

[3] Defendants point to two District of New Jersey cases that hold that there is no right of action based on association with a member to a protected class, however, this Court is not persuaded by their holdings. *Poveromo-Spring v. Exxon Corporation*, 938 F. Supp 219 (D.N.J. 1997), predates both *O'Lone* and *Berner*. Similarly, while *Kennedy v. Chubb Group of Insurance Companies*, 60 F. Supp. 2d 384 (D.N.J. 1999), was decided after *O'Lone* and *Berner*, the court did not discuss or even mention either decision.

Division's analysis simply clarifies the situations in which an associational right exists. The court reiterated that in those cases, "the plaintiff was a person who was 'aggrieved' by the unlawful discrimination" and was the "'functional equivalent' of a member of a protected class." *Id.* at 501. In *L.W.*, however, the Court dismissed the mother's claim because she "was not denied the advantages of a public education by reason of the biased-based harassment experienced by her son." *Id.*

The instant case presents precisely the type of conduct where *O'Lone* and *Berner* are applicable. Downs was the "functional equivalent" of a disabled person. He was deprived of the benefits of his employment because he had to repeatedly, and with minimal notice, take time off from work due to his wife's disability, making him an "aggrieved person" under N.J.S.A. § 10:5-13. *Cf. L.W.*, 371 N.J. Super. at 501.

While both parties undertake the arduous task of statutory interpretation by comparing the language in various sections of the NJLAD and analyzing the legislative history, the Court is nonetheless persuaded by the fact the that in the eight years since *O'Lone* was decided the New Jersey Supreme Court has not found it necessary to speak on the issue. Additionally, the Third Circuit has acknowledged that *O'Lone* and *Berner* stand for the proposition that there is an associational right under NJLAD. *Pascucci v. Twp. of Irvington*, 46 F. App'x 114, 117 (3d Cir. 2002)

8

(rejecting NJLAD association claim for lack of evidence). In the absence of any contrary authority, this Court concludes that the New Jersey Supreme Court would hold that NJLAD bars employment discrimination based upon a person's association with a person with a disability.

Furthermore, as the Defendants seek summary judgment based solely on the contention that the right Downs seeks to exercise does not exist, and they do not contend that he is unable to establish his *prima facie* case, nor do they offer a legitimate non-discriminatory reason for the termination, the Court will not rule on those issues. *See generally Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981); *McDonnel Douglas Corp. V. Green*, 411 U.S. 792 (1973).

**V.**

As discussed above, the Court denies Defendants' Motion for Partial Summary Judgment. The Court will enter an appropriate order.

Date: August 1st, 2006

JOSEPH E. IRENAS
Senior United States District Judge